**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**ATLANTIC SPECIALTY INSURANCE CO.**                **CIVIL ACTION**
**et al.**

                                                    **NO. 20-1863**

**VERSUS**

                                                    **SECTION: "G"**

**CATERPILLAR INC.**

**ORDER AND REASONS**

This litigation arises out of an explosion aboard the *M/V Kelly Ann Candies* allegedly caused by a fracture in the engine's crank shaft.[1] Plaintiff-Insurers Atlantic Specialty Insurance Company, Markel American Insurance Company, State National Insurance Company, Navigators Insurance Company, Mitsui Sumitomo Insurance Company of America, AGCS Marine Insurance Company, Stratford Insurance Company, and Lloyd's Underwriters (collectively, "Plaintiffs"), subrogated to the rights of their insured, Otto Candies, LLC, the alleged owner of the *M/V Kelly Ann Candies*, bring suit against Defendant Caterpillar, Inc. ("Defendant") as the alleged manufacturer of the defective crankshaft.[2] Before the Court is Defendant's "Second Motion for Partial Summary Judgment."[3] In the motion, Defendant seeks partial summary judgment dismissing Plaintiffs' tort claims, arguing that the economic-loss rule bars recovery.[4] Considering the motion, the memoranda in support and opposition, the record, and the applicable law, the

---

[1] Rec. Doc. 1 at 2–3.

[2] *Id.*

[3] Rec. Doc. 22.

[4] *Id. See also* Rec. Doc. 22-3 at 6–7.

1

Court denies the motion.

## I. Background

This dispute arises out of an engine failure aboard the *M/V Kelly Ann Candies* (the "Vessel").[5] Plaintiffs assert that, on April 16, 2019, one of the Vessel's engines "suffered a catastrophic failure," causing pistons, rods, and other engine parts to be forcibly ejected from the engine, damaging the Vessel, and starting a fire in the engine room.[6] Plaintiffs aver that metallurgical testing determined that the cause of the engine failure was a fracture in the engine's crank shaft.[7] Plaintiffs allege that the crank shaft fractured because of Defendant's faulty design and manufacturing.[8] Plaintiffs assert that they are insurers of the Vessel's owner, Otto Candies, LLC ("Owner").[9] Plaintiffs submit that they made payment to Owner pursuant to an insurance policy and are subrogated to the rights of Owner.[10]

On July 1, 2020, Plaintiffs filed a Complaint in this Court asserting tort claims and breach of implied warranty claims against Defendant.[11] On July 14, 2021, Defendant filed the instant motion for partial summary judgment, seeking dismissal of Plaintiffs' tort claims.[12] On August 3, 2021, Plaintiffs filed their opposition to the motion.[13] On August 10, 2021, with leave of Court,

---

[5] Rec. Doc. 1 at 3.

[6] *Id.*

[7] *Id.*

[8] *Id.* at 4.

[9] *Id.* at 2.

[10] *Id.*

[11] *Id.* at 4–5.

[12] Rec. Doc. 22.

[13] Rec. Doc. 27.

Defendant filed its reply brief in further support of the motion.[14] On August 23, 2021, with leave of Court, Plaintiffs filed a sur-reply brief in further opposition to the motion.[15] Finally, on August 27, 2021, with leave of Court, Defendant filed its sur-reply in further support of the motion.[16]

## II. Parties' Arguments

### A.    *Defendant's Arguments in Support of the Motion for Partial Summary Judgment*

Defendant seeks summary judgment dismissing Plaintiffs' tort claims.[17] In support, Defendant argues that maritime law governs Plaintiffs' tort claims.[18] Defendant asserts that "[t]o give rise to a tort claim in admiralty, an incident must have both a maritime situs and a connection to traditional maritime activity."[19] Defendant contends that both requirements are met here. First, Defendant alleges that the incident at issue here occurred while the Vessel was moored in Port Fourchon, Louisiana, which Defendant asserts satisfies the maritime locus requirement.[20] Second, Defendant avers that the United States Supreme Court has "held that a fire aboard a vessel docked at a marina on a navigable waterway satisfied the 'connection to traditional maritime activity' requirement, because it (a) satisfies the 'requirement of potential disruption to commercial maritime activity,' and because 'docking a vessel at a marina on a navigable waterway is a

---

[14] Rec. Docs. 29, 30, 31.

[15] Rec. Docs. 33, 34, 35.

[16] Rec. Docs. 36, 37, 38.

[17] Rec. Doc. 22.

[18] Rec. Doc. 22-3 at 4.

[19] *Id.* (quoting *Dozier v. Rowan Drilling Co.*, 397 F. Supp. 2d 837, 846 (S.D. Tex. 2005) (quoting *Hufnagel v. Omega Serv. Indus.*, 182 F.3d 340, 351 (5th Cir. 1999))).

[20] *Id.* (citing *Rogers v. Coastal Towing, L.L.C.*, 723 F. Supp. 2d 929, 932 n.3 (E.D. La. 2010) (Duval, J.)).

common, if not indispensable, maritime activity.'"[21]

Defendant contends that Plaintiffs cannot recover for the damages allegedly caused by the engine failure.[22] Defendant asserts that a subrogee has the same rights and remedies as its subrogor.[23] Here, Defendant argues that the insured-subrogor is barred from recovery by the economic loss doctrine.[24] This doctrine, established by the Supreme Court in *East River Steamship Corp. v. Transamerica Delaval, Inc.*, "prohibits a purchaser of a product in a commercial transaction from recovering in tort against the product's manufacturer for economic loss that arises from damage that the product does to itself."[25] Defendant asserts that in order to determine what constitutes "the product" under *East River*, the Fifth Circuit applies the "object of the bargain" standard.[26] Defendant argues that caselaw establishes "when, in a maritime case, a plaintiff has contracted to purchase a completed vessel, and an original component part of that vessel later allegedly fails and damages other aspects of the vessel, the plaintiff is precluded from maintaining a tort claim against the component manufacturer."[27]

Defendant argues "this case presents exactly that scenario."[28] Defendant asserts that Owner did not contract directly with Defendant to purchase the engine containing the allegedly

---

[21] *Id.* at 5 (quoting *Sisson v. Ruby*, 497 U.S. 358, 363, 367 (1990)).

[22] *Id.* at 5–6.

[23] *Id.* at 6.

[24] *Id.*

[25] *Id.* at 6–7 (quoting *Petrobas Am. Inc. v. Cadenas*, No. 12-888, 2014 WL 11309803, at *2 (S.D. Tex. Aug. 11, 2014), *reversed on other grounds*, 815 F.3d 211 (5th Cir. 2016)). *See also E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986).

[26] *Id.* at 6 – 8 (citing *Shipco 2295, Inc. v. Avondale Shipyards, Inc.*, 825 F.2d 925, 928 (5th Cir. 1987).

[27] *Id.* at 7–9 (discussing *Petrobas*, 2014 WL 11309803, at *2–4; *Shipco*, 825 F.2d 925 at 925–29; *Nicor Ships Assocs. v. Gen. Motors Corp.*, 876 F.2d 501, 502 (5th Cir. 1989)).

[28] *Id.* at 9.

4

defective crank shaft.[29] Rather, Defendant avers that Owner "contracted with Candies Shipbuilders, LLC [("Shipbuilders")] to build and supply the completed Vessel itself."[30] Defendant argues that the "object" of Owner's contract was the entire Vessel, rather than the engine.[31] Defendant argues that *East River*'s economic loss doctrine bars Owner from recovering from Defendant because the alleged damage is damage that "product," namely, the Vessel, caused to itself.[32] As a result, Defendant contends that Plaintiffs, as subrogees, cannot recover for losses that their subrogor could not recover.[33] Thus, Defendant urges the Court to dismiss Plaintiffs' tort claims.[34]

**B.    *Plaintiffs' Opposition to the Motion for Partial Summary Judgment***

In opposition, Plaintiffs argue that Defendant's motion is meritless because Defendant "bases its argument on an erroneous factual assertion," namely, that Owner purchased the "defective engine through a contract with the shipyard that built the vessel."[35] Instead, Plaintiffs assert that Owner contracted directly with Defendant's local dealer, Louisiana Machinery.[36] Plaintiffs aver that the invoice relied upon by Defendant to show that the engine was sold directly to Shipbuilders is not the correct invoice.[37] Plaintiffs allege that Owner requested and received a

---

[29] *Id.*

[30] *Id.*

[31] *Id.* at 9–10.

[32] *Id.*

[33] *Id.* at 10.

[34] *Id.*

[35] Rec. Doc. 27 at 2.

[36] *Id.*

[37] *Id.* Plaintiffs assert that the invoices are identical in all respects except the recipient and the invoice number, with the replacement invoice having an additional "1" appended to the end. *Id. See also* Rec. Doc. 21-8

replacement invoice to reflect that Owner paid Louisiana Machinery directly for the engine.[38]

On that basis, Plaintiffs argue that recovery is not barred by the economic loss doctrine.[39] Plaintiffs assert that the evidence shows Owner purchased the engine directly, rather than as part of a vessel construction contract.[40] Therefore, Plaintiffs contend that the engine itself was the "object" of the contact and thus the "product" under the economic loss rule.[41] Plaintiffs argue that the alleged damage was caused by the engine (the product) to the Vessel (other property) and is therefore recoverable under the economic loss rule.[42] Moreover, rather than calling for dismissal of Plaintiffs' tort claims, Plaintiffs assert that the economic loss rule would "at most be a basis for limiting the recoverable damages, based on the dollar value of damage to the engine as opposed to the dollar value of damage to the rest of the [V]essel."[43] Thus, Plaintiffs urge the Court to deny Defendant's motion.[44]

**C.    *Defendant's Reply in Further Support of the Motion for Partial Summary Judgment***

In reply, Defendant asserts that Plaintiffs' Opposition was its first notice that Louisiana Machinery issued a revised invoice.[45] Defendant avers that the only invoice it received—the invoice addressed to Shipbuilders—was provided to Defendant by counsel for Louisiana

---

(Invoice No. 11315001); Rec. Doc. 27-2 at 9 (Invoice No. 11315011).

[38] Rec. Doc. 27 at 7.

[39] *Id.* at 4.

[40] *Id.*

[41] *Id.* at 4–5.

[42] *Id.* at 5.

[43] *Id.*

[44] *Id.* at 7.

[45] Rec. Doc. 31 at 1–2.

Machinery.[46] Defendant asserts that Plaintiffs failed to disclose the revised invoice in their September 29, 2020 response to Defendant's request for production.[47] Moreover, Defendant alleges that its belief that the engine was sold directly to Shipbuilders was "seemingly confirmed on July 29, 2021" when Plaintiffs failed to disclose the revised invoice in response to Defendant's subpoena requesting all documents "that were exchanged between any Candies entity and Louisiana Machinery."[48] Thus, Defendant contends that any "factual omissions" on its part "must be attributed to Plaintiffs[]."[49]

Nevertheless, Defendant maintains that Plaintiffs' tort claims are barred by *East River*'s economic loss rule.[50] Defendant asserts that "[b]oth parties agree that . . . *Shipco 2295, Inc. v. Avondale Shipyards, Inc.* requires a focus on what constitutes the product for purposes of an *East River* analysis."[51] Defendant avers that, in that case, the United States Court of Appeals for the Fifth Circuit found that defective equipment was a component part of the integrated product at issue, even though that equipment had been provided by a third party.[52] Here, Defendant argues that the engine was specifically purchased as a component part to be installed in an integrated product—the Vessel.[53] Thus, Defendant argues that the party that "paid for the engine is

---

[46] *Id.* at 2.

[47] *Id.* at 2–3.

[48] *Id.* at 3.

[49] *Id.* at 4.

[50] *Id.*

[51] *Id.* (citation omitted).

[52] *Id.* (citing *Shipco*, 825 F.2d at 928).

[53] *Id.*

irrelevant."[54]

**D.      Plaintiffs' Sur-Reply in Further Opposition to the Motion for Partial Summary Judgment**

In further opposition, Plaintiffs argue that Defendant contradicts itself.[55] Plaintiffs assert that Defendant originally suggested that the "outcome-determinative question" was "[w]ho bought the engine from [Defendant]'s dealer?"[56] However, Plaintiffs assert that Defendant's reply brief "does an about-face" and suggests that it is "irrelevant" who purchased the engine from Defendant.[57]

Plaintiffs contend that, in *Saratoga Fishing Co. v. J.M. Martinac & Co.*, the Supreme Court held "[w]hen a manufacturer places an item in the stream of commerce by selling it to an Initial User, that item is the 'product itself' under *East River*."[58] Plaintiffs assert that Defendant placed the engine into the stream of commerce by selling it to Owner.[59] Thus, Plaintiffs argue the defective engine is the "product" and the damage it caused to the Vessel is damage to "other property" that is not barred by the economic loss rule.[60]

Plaintiffs also argue that Defendant's argument "conflicts with the policy underlying *East*

---

[54] *Id.* at 7.

[55] Rec. Doc. 35 at 1.

[56] *Id.* at 1–2.

[57] *Id.* at 2–3.

[58] *Id.* at 3 (quoting *Saratoga Fishing Co. v. J.M. Martinac & Co.*, 520 U.S. 875, 879 (1997)). *See also Transco Syndicate No. 1, Ltd. v. Bollinger Shipyards, Inc.*, 1 F. Supp. 2d 608 (E.D. La. 1998) (Vance, J.); *Mays Towing Co. v. Universal Machinery Co.*, 755 F. Supp. 830 (S.D. Ill. 1990)).

[59] *Id.*

[60] *Id.*

*River*."[61] Plaintiffs assert that the economic loss rule was designed to limit a purchaser to its remedies in contract rather than tort in certain circumstances.[62] Given that the purchase agreement here was for an engine, Plaintiffs contend that the agreement "could not have entailed any warranty rights with respect to a vessel."[63] Thus, Plaintiffs assert "[Defendant]'s proposed interpretation of the law would . . . thwart *East River*'s intended trade-off between warranty and tort rights."[64]

### E.    *Defendant's Sur-Reply in Further Support of the Motion for Partial Summary Judgment*

Defendant argues that Plaintiffs' reliance on the purchase order and invoice is misplaced.[65] Instead, Defendant highlights that these documents demonstrate that the engine was purchased specifically to be installed in the Vessel.[66] Defendant contends that this "demonstrates that this engine purchase fits within the integrated product rule set forth in *Shipco*."[67]

Defendant distinguishes *Saratoga Fishing* by asserting that in that case a vessel owner added equipment to a vessel "after the vessel had already been constructed and transferred to its second owner."[68] Unlike *Saratoga Fishing*, Defendant argues that the equipment at issue here—

---

[61] *Id.* at 9.

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] Rec. Doc. 38 at 1.

[66] *Id.* at 1–2.

[67] *Id.* at 2.

[68] *Id.*

9

the engine—"was installed as part of the original construction of the vessel."[69] Defendant asserts that the correct reading of *Saratoga Fishing* is "that equipment installed prior to [a] vessel's delivery from [a] shipyard [is] part of the 'product itself.'"[70]

Defendant argues that the Ninth Circuit's reading of *Saratoga Fishing* also supports its contention that the engine was part of the integrated product.[71] Defendant contends that the Ninth Circuit's interpretation of *Saratoga Fishing*'s integrated product rule looks to *who* installed the equipment, rather than *when* the equipment was installed.[72] Under this reading, Defendant asserts, "items installed by the end user are 'other property' and items installed by the manufacturer are part of the product."[73] Here, Defendant argues that "under either test, [Defendant] wins," because the equipment was installed prior to the vessel's delivery to Owner and because "it was installed by manufacturer/Shipbuilders, not [Owner]."[74]

Defendant also highlights that "from production, through invoicing and delivery" the engine at issue here was intended for installation in the Vessel.[75] Defendant asserts that "[f]or that reason, the engine is part of the vessel or integrated product that [Owner] sought when it engaged Shipbuilders to build a vessel."[76] Defendant argues that Plaintiff "focus[es] on the wrong

---

[69] *Id.* at 2–3.

[70] *Id.* at 3–4 (discussing *Masforce Europe, BBVA v. Mastry Marine & Indus. Supply, Inc.*, No. 11-1814, 2013 WL 12156533 (M.D. Fla. Oct. 24, 2013)).

[71] *Id.* at 4 (discussing *CHMM, LLC v. Freeman Marine Equip., Inc.*, 791 F.3d 1059 (9th Cir. 2015)).

[72] *Id.*

[73] *Id.*

[74] *Id.*

[75] *Id.* at 5.

[76] *Id.*

contract" and "ignor[es] the 'Hull 149' reference and the bigger project of which the engine purchase was just a small part."[77] Defendant asserts that in most economic loss rule cases, the buyer sues the shipyard.[78] But, here, Defendant contends that Owner did not want to sue Shipbuilders because they are "sister company[ies]."[79] Defendant asserts that Owner should not be allowed to "evade the economic loss doctrine by claiming all the components it buys for its vessels are 'other property' when its own shipyard put the components together into a single product."[80] Thus, Defendant argues its motion should be granted.[81]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[82] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[83] All reasonable inferences are drawn in favor of the nonmoving party. Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[84] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then

---

[77] *Id.*

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.*

[82] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[83] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[84] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[85] The nonmoving party may not rest upon the pleadings.[86] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[87]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[88] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[89] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[90] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[91]

---

[85] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[86] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[87] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[88] *Celotex*, 477 U.S. at 323.

[89] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[90] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[91] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[92] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[93] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.

## IV. Analysis

In the motion, Defendant argues that the economic loss rule bars recovery for Plaintiffs' tort claims because the engine was an integrated part of the vessel, and thus the damage the engine caused to the vessel was not damage to "other property."[94] Plaintiffs argue that the engine was the sole object of the contract between Owner and Louisiana Machinery and thus the damage it caused to the vessel was damage to "other property."[95]

As an initial matter, Defendant argues, and Plaintiffs do not contest, that maritime law applies to Plaintiffs' tort claims.[96] "To give rise to a tort claim in admiralty, an incident must have both a maritime situs and a connection to traditional maritime activity."[97] "[S]torage and maintenance of a vessel at a marina on navigable waters is substantially related to 'traditional

---

[92] *Little*, 37 F.3d at 1075 (internal citations omitted).

[93] *Morris*, 144 F.3d at 380.

[94] Rec. Doc. 22-3 at 6–10; Rec. Doc. 31 at 4–7.

[95] Rec. Doc. 27 at 4–7; Rec. Doc. 35 at 1–9. Given that Plaintiffs are subrogated to the rights of Owner, the Court will make no distinction between the two for purposes of the remaining analysis.

[96] Rec. Doc. 22 at 5; Rec. Doc. 27 at 4.

[97] *Hugnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 351 (5th Cir. 1999) (citing *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995); *Sisson v. Ruby*, 497 U.S. 358 (1990); *Foremost Ins. Co. v. Richardson*, 457 U.S. 668 (1982); *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, (1972)).

maritime activity' . . . ."[98] Here, the incident occurred while the Vessel was "moored at Bollinger

Shipyard in Port Fourchon, Louisiana."[99] Accordingly, the Court finds that the tort claims are

governed by maritime law.

In *East River*, the United States Supreme Court considered "whether a cause of action in

tort is stated [under maritime law] when a defective product purchased in a commercial

transaction malfunctions, injuring only the product itself and causing purely economic loss."[100]

The Court held "that a manufacturer in a commercial relationship has no duty under a negligence

or strict products-liability theory to prevent a product from injuring itself."[101] The Court reasoned

that:

> Damage to a product itself is most naturally understood as a warranty claim. Such
> damage means simply that the product has not met the customer's expectations,
> or, in other words, that the customer has received "insufficient product value." The
> maintenance of product value and quality is precisely the purpose of express and
> implied warranties. Therefore, a claim of a nonworking product can be brought as
> a breach-of-warranty action. Or, if the customer prefers, it can reject the product
> or revoke its acceptance and sue for breach of contract.[102]

Applying *East River*, Fifth Circuit case law "ask[s] what is the object of the contract or

bargain that governs the rights of the parties?"[103] For example, in *Shipco*, the Fifth Circuit held

that a completed vessel was the "product" for purposes of the economic loss rule.[104] There, a

shipowner entered into "six separate but identical contracts" with a shipyard for the construction

---

[98] *Sisson*, 497 U.S. at 367.

[99] Rec. Doc. 1 at 2.

[100] 476 U.S. at 859.

[101] *Id.* at 871.

[102] *Id.* at 872.

[103] *Shipco*, 825 F.2d at 928.

[104] *Id.*

of vessels.[105] The shipyard assembled the vessels and included a steering system that the shipyard purchased from a third-party and incorporated into the vessels.[106] When those steering systems malfunctioned, the shipowner sought recovery from the manufacturer.[107] In finding that *East River*'s economic loss rule barred the shipowner from recovering in tort, the Fifth Circuit specifically reasoned that, because "[the shipowner] did not bargain separately for individual components," the vessel "must be considered 'the product' rather than the individual components that made up the vessel[]."[108]

Defendant urges the Court to read *Shipco*'s "integrated product" rule to apply when a shipowner purchases a component that is intended to be incorporated into a vessel.[109] However, *Shipco* imposes no such intent requirement. Moreover, in *Shipco*, the Fifth Circuit emphasized that the shipowner "did not bargain separately for individual components."[110] Here, unlike in *Shipco*, Owner plainly bargained for individual components because it purchased the allegedly defective engine and the completed Vessel pursuant to entirely separate and distinct agreements.[111]

Although not binding, another district judge of this Court dealt with a similar factual

---

[105] *Id.* at 925.

[106] *Id.* at 926.

[107] *Id.* More precisely, Shipco 2295 Inc., as assignee of the shipowner, brought suit to recover damages. *Id.* at 926, 928 n.2.

[108] *Id.* at 928. *See also Nicor Supply Ships Assocs. v. General Motors Corp.*, 876 F.2d 501, 506 (5th Cir. 1989) ("Because these [defective] items were not part of the contract under which the vessel was sold, damage to them is an injury for which their proprietor may recover in tort.").

[109] Rec. Doc. 31 at 5.

[110] *Shipco*, 825 F.2d at 928.

[111] Indeed, Plaintiffs assert that Owner purchased the engine and did not give it to Shipbuilders until "three years later." Rec. Doc. 35 at 3.

scenario to this case. In *Transco Syndicate No. 1, Ltd. v. Bollinger Shipyards, Inc.*, the district judge held that a shipowner could recover from a manufacturer where that shipowner purchased a defective engine from a distributor and provided that engine to a shipbuilder to install in a vessel.[112] The district court rejected the manufacturer's argument that the completed vessel was the "product" for purposes of the economic loss rule, reasoning that the shipowner purchased the defective engine and the vessel separately.[113] As the district court explained, "[t]hat the engines were installed on the ship does not make the vessel the object of [the contract]."[114]

Here, the Court finds this reasoning persuasive. Like the shipowner in *Transco*, Plaintiffs purchased the engine from Defendant's distributor.[115] Plaintiffs later provided that engine to Shipbuilders to install in the Vessel. The engine and the Vessel were bargained for pursuant to two entirely separate and distinct contracts. Defendant's argument that the "object" of both of these contracts is the completed Vessel is unavailing. The Court finds that the allegedly defective engine was the object of Plaintiffs' contract with Defendant's distributor. Therefore, the Vessel is "other property" for purposes of the economic loss rule. Plaintiffs may not recover for the damage the engine did to *itself*, but Plaintiffs' tort claims for damage to the Vessel may proceed. Accordingly, the Court denies Defendant's motion for summary judgment.

---

[112] 1 F. Supp. 2d 608, 609, 612–13 (E.D. La. 1998) (Vance, J.).

[113] *Id.* at 612.

[114] *Id. See also Mays Towing Co. v. Univ. Machinery Co.*, 755 F. Supp. 830, 833 (S.D. Ill. 1990) (holding a shipowner was not barred from recovery where shipowner purchased engines and boat separately).

[115] *See* Rec. Doc. 22-2 at 3; Rec. Doc. 27-1 at 3.

### V. Conclusion

Considering the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment[116]

is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this  15th  day of October, 2021.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[116] Rec. Doc. 22.

17