UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ATLANTIC SPECIALTY INSURANCE CO.** et al. | **CIVIL ACTION** |
| | **NO. 20-1863** |
| **VERSUS** | |
| | **SECTION: "G"** |
| **CATERPILLAR INC.** | |

## ORDER AND REASONS

This litigation arises out of an explosion aboard the *M/V Kelly Ann Candies* allegedly caused by a fracture in the engine's crankshaft.[1] Plaintiff-Insurers Atlantic Specialty Insurance Company, Markel American Insurance Company, State National Insurance Company, Navigators Insurance Company, Mitsui Sumitomo Insurance Company of America, AGCS Marine Insurance Company, Stratford Insurance Company, and Lloyd's Underwriters (collectively, "Plaintiffs"), subrogated to the rights of their insured, Otto Candies, LLC, the alleged owner of the *M/V Kelly Ann Candies* bring suit against Defendant Caterpillar, Inc. ("Defendant"), as the alleged manufacturer of the defective crank shaft.[2] Before the Court is Defendant's "Motion for Partial Summary Judgment."[3] In the motion, Defendant seeks partial summary judgment dismissing Plaintiffs' implied warranty claims, arguing these claims are prescribed under Louisiana law. Considering the motion, the memoranda in support and opposition, the record, and the applicable law, the Court grants the motion.

---

[1] Rec. Doc. 1 at 2–3.

[2] *Id.*

[3] Rec. Doc. 21.

1

## I. Background

This dispute arises out of an engine failure aboard the *M/V Kelly Ann Candies* (the "Vessel").[4] Plaintiffs assert that, on April 16, 2019, one of the Vessel's engines "suffered a catastrophic failure," causing pistons, rods, and other engine parts to be forcibly ejected from the engine, damaging the Vessel, and starting a fire in the engine room.[5] Plaintiffs aver that metallurgical testing determined that the cause of the engine failure was a fracture in the engine's crank shaft.[6] Plaintiffs allege that the crank shaft fractured because of Defendant's faulty design and manufacturing.[7] Plaintiffs assert that they are insurers of the Vessel's owner, Otto Candies, LLC ("Owner").[8] Plaintiffs submit that they made payment to Owner pursuant to an insurance policy and are subrogated to the rights of Owner.[9]

On July 1, 2020, Plaintiffs filed a Complaint in this Court asserting tort claims and breach of implied warranty claims against Defendant.[10] On July 14, 2021, Defendant filed the instant motion for partial summary judgment, seeking dismissal of Plaintiffs' implied warranty claims.[11] On August 3, 2021, Plaintiffs filed their opposition to the motion.[12] On August 10, 2021, with

---

[4] Rec. Doc. 1 at 3.

[5] *Id.*

[6] *Id.*

[7] *Id.* at 4.

[8] *Id.* at 2.

[9] *Id.*

[10] *Id.* at 4–5.

[11] Rec. Doc. 21.

[12] Rec. Doc. 27.

leave of Court, Defendant filed its reply brief in further support of the motion.[13]

## II. Parties' Arguments

### A. Defendant's Arguments in Support of the Motion for Partial Summary Judgment

Defendant seeks summary judgment dismissing Plaintiffs' implied warranty claims.[14] In support, Defendant argues that Louisiana law, not maritime law, governs Plaintiffs' implied warranty claims.[15] Defendant avers that "a contract to construct a ship or to supply materials for its construction is non-maritime."[16] Defendant asserts that the engine containing the allegedly defective crank shaft was sold by Defendant to third-party Louisiana Machinery Company ("Louisiana Machinery"), which then sold the engine to third-party Candies Shipbuilders LLC ("Shipbuilders").[17] Defendant alleges that Candies then incorporated that engine into the Vessel.[18] Thus, Defendant asserts that, because the engine at issue here was purchased for the construction of the Vessel, "claims arising from that sale are not governed by maritime law," but rather state law.[19]

Defendant contends that Louisiana law governs this sale because the engine was sold by Defendant's Louisiana distributor, to a Louisiana company, for use by another Louisiana company,

---

[13] Rec. Docs. 29, 30, 31.

[14] Rec. Doc. 21.

[15] Rec. Doc. 21-3 at 4.

[16] *Id.* at 5 (citing *Tidewater, Inc. v. Baldwin-Lima Hamilton Corp.*, 410 So. 2d 335, 358 (La. App. 4 Cir. 1982); *Thames Towboat Co. v. The Schooner Francis McDonald*, 254 U.S. 242 (1920); *Walter v. Marine Off. of Am.*, 537 F.2d 89, 94 (5th Cir. 1976)).

[17] *Id.* at 2.

[18] *Id.* at 2–3.

[19] *Id.* at 5–6.

"and because the [P]laintiffs brought this case in Louisiana."[20] Under Louisiana law, Defendant asserts that Plaintiffs claims have prescribed.[21] Defendant argues that Louisiana law requires "that actions based on breach of warranty against defects are to be brought in redhibition instead of as a breach of contract."[22] Defendant asserts that a prescriptive period of one year applies to redhibition claims against manufacturers.[23] Defendant avers that prescription begins to run from the date the defect is "discovered."[24] Defendant argues that Louisiana courts have held that a defect is "discovered," and prescription commences, "from the time there is sufficient notice as to call for inquiry about a claim, not from the time when the inquiry reveals facts or evidence sufficient to prove the claim."[25] Defendant submits that actual notice is not required, only "constructive notice" sufficient to "put the owner on his guard and call for inquiry."[26]

Here, Defendant asserts that the April 16, 2019 engine failure "was sufficient 'enough to excite attention and put the owner on his guard and call for inquiry.'"[27] Although Plaintiffs allege that it was not until November 13, 2019 that metallurgical testing determined the crank shaft was the cause of the engine failure, Defendant argues the date of the engine failure itself constituted

---

[20] *Id.* at 6.

[21] *Id.*

[22] *Id.* (quoting *PPG Indus. v. Indus. Laminates Corp.*, 664 F.2d 1332, 1335 (5th Cir. 1982).

[23] *Id.* at 7 (quoting La. Civ. Code art. 2534 ("The action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer.")). Defendant also argues that article 2545 of the Louisiana Civil Code creates a presumption that a manufacturer of a thing had knowledge of that thing's redhibitory defect. *Id.* (citing La. Civ. Code art. 2545).

[24] *Id.*

[25] *Id.* (quoting *David v. Meek*, 97-0523, p. 4–5 (La. App. 1 Cir. 4/8/98); 710 So. 2d 1160, 1163).

[26] *Id.* at 8 (quoting *First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 404 (E.D. La. 2016) (internal quotations omitted)).

[27] *Id.* (quoting *First Am. Bankcard*, 178 F. Supp. 3d at 404).

constructive notice of the defect.[28] In the event the Court finds the engine failure did not constitute constructive notice, Defendant asserts that Plaintiffs were on constructive notice by the May 9 to 13, 2019 "teardown and failure investigation," or, at the latest, by the May 28, 2019 metallurgist investigation.[29] Thus, Defendant argues that, "by the time [P]laintiffs filed their lawsuit on July 1, 2020, those claims were already prescribed."[30] On that basis, Defendant submits Plaintiffs claims should be dismissed.[31]

### B.  *Plaintiffs' Opposition to the Motion for Partial Summary Judgment*

In opposition, Plaintiffs argue that Defendant's motion is meritless because Defendant "bases its argument on an erroneous factual assertion," namely, that Owner purchased the "defective engine through a contract with the shipyard that built the vessel."[32] Instead, Plaintiffs assert that Owner contracted directly with Defendant's local dealer, Louisiana Machinery.[33] Plaintiffs aver that the invoice relied upon by Defendant to show that the engine was sold directly to Shipbuilders is not the correct invoice.[34] Plaintiffs allege that Owner requested and received a replacement invoice to reflect that Owner paid Louisiana Machinery directly for the engine.[35]

Accordingly, Plaintiffs argue that Defendant is incorrect in arguing that the contract at issue

---

[28] *Id.* at 9–10.

[29] *Id.*

[30] *Id.* at 10–11.

[31] *Id.*

[32] Rec. Doc. 27 at 2.

[33] *Id.*

[34] *Id.* Plaintiffs assert that the invoices are identical in all respects except the recipient and the invoice number, with the replacement invoice having an additional "1" appended to the end. *Id. See also* Rec. Doc. 21-8 (Invoice No. 11315001); Rec. Doc. 27-2 at 1 (Decl. of Otto Candies, III); Rec. Doc. 27-2 at 9 (Invoice No. 11315011).

[35] Rec. Doc. 27 at 7.


here is a "vessel-construction contract" and therefore not a maritime contract.[36] Plaintiffs assert that Owner purchased the engine for itself, "not through a contract with the shipyard to buy a completed vessel."[37] Plaintiffs submit that Defendant offers no argument as to whether Louisiana Machinery's contract of sale with Owner is subject to Louisiana law.[38] Thus, Plaintiffs contend that Defendant analyzes the wrong contract and therefore the motion should be denied.[39]

C. *Defendant's Reply in Further Support of the Motion for Partial Summary Judgment*

In reply, Defendant asserts that Plaintiffs' Opposition was its first notice that Louisiana Machinery issued a revised invoice for purchase of the engine.[40] Defendant avers that the only invoice it received—the invoice addressed to Shipbuilders—was provided to Defendant by counsel for Louisiana Machinery.[41] Defendant asserts that Plaintiffs failed to disclose the revised invoice in their September 29, 2020 response to Defendant's request for production.[42] Moreover, Defendant alleges that its belief that the engine was sold directly to Shipbuilders was "seemingly confirmed on July 29, 2021" when Plaintiffs failed to disclose the revised invoice in response to Defendant's subpoena requesting all documents "that were exchanged between any Candies entity and Louisiana Machinery."[43] Thus, Defendant contends that any "factual omissions" on its part

---

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.* at 7–8.

[40] Rec. Doc. 31 at 1–2.

[41] *Id.* at 2.

[42] *Id.* at 2–3.

[43] *Id.* at 3.

"must be attributed to Plaintiffs[]."[44]

Further, Defendant argues that the party the Vessel owner contracted with does not change the analysis.[45] Defendant asserts that Owner contracted with Shipbuilders to construct the Vessel.[46] Defendant asserts that it does not matter "that some of [the Vessel's] component parts were to be purchased by [Owner] and some by Shipbuilders."[47] Moreover, Defendant asserts that Plaintiffs do not dispute that contracts to build vessels are non-maritime contracts. Thus, Defendant argues that its prescription defense "remains unaffected and unchallenged."[48]

### III. Legal Standard

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[49] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[50] All reasonable inferences are drawn in favor of the nonmoving party. Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[51] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then

---

[44] *Id.* at 4.

[45] *Id.* at 7.

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[50] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[51] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a matter of law.[52] The nonmoving party may not rest upon the pleadings.[53] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[54]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[55] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[56] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[57] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[58]

---

[52] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[53] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[54] *See id.*; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[55] *Celotex*, 477 U.S. at 323.

[56] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (quoting *Little*, 939 F.2d at 1299).

[57] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[58] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[59] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[60] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.

## IV. Analysis

Defendant argues that Plaintiffs' implied warranty claims are prescribed and should be dismissed. In opposition, Plaintiffs argue that Defendant's arguments are inapposite because it analyzes the wrong contract.

On a motion for summary judgment, the moving party bears the initial burden of showing the absence of a genuine issue of material fact.[61] Then the burden shifts to the nonmoving party to point to specific facts that show "the existence of a 'genuine' issue."[62] However, the nonmovant may not merely create "some metaphysical doubt as to the material facts."[63] Here, Plaintiffs argue that Defendant's analysis of the original invoice is inapposite because Louisiana Machinery issued a revised invoice to reflect that Owner purchased the engine directly.[64] This argument serves only to create "some metaphysical doubt as to the material facts."[65] Plaintiffs do not address

---

[59] *Little*, 37 F.3d at 1075 (internal citations omitted).

[60] *Morris*, 144 F.3d at 380.

[61] *Celotex*, 477 U.S. at 323.

[62] *Morris*, 144 F.3d at 380; *see also Bellard*, 675 F.3d at 460.

[63] *Little*, 37 F.3d at 1075 (internal citations omitted).

[64] Rec. Doc. 27 at 4–5; Rec. Doc. 27-2 at 1 (Decl. of Otto Candies, III).

[65] *Little*, 37 F.3d at 1075.

Defendant's arguments as to whether Louisiana law applies to the contract. Moreover, Plaintiffs do not respond to Defendant's assertion that its arguments are unaffected by the revised invoice.[66]

Defendant contends that (1) sales of equipment for the construction of a vessel are non-maritime and therefore (2) Louisiana law applies because the sale took place in Louisiana, among Louisiana entities, and Plaintiffs' claims arose in Louisiana.[67] Although Defendant made these arguments in the context of the initial invoice, they remain true for the revised invoice. Indeed, the only substantial differences between the initial and revised invoices are the name of the buyer and the invoice number.[68] The date of the sale and items sold are the same.[69] The revised invoice was for the sale of an engine for a vessel, the agreement was entered into in Louisiana, by Louisiana entities, and the claim arose in Louisiana.

"The rule of law that the interpretation of written instruments is a question of law for the court, is applied with full force to agreements to be deduced from the correspondence of the parties."[70] The parties provide invoices for the sale of the engine to the Court.[71] In the absence of a formal written agreement, interpreting the effect of these invoices is a question of law for the Court to decide.[72] "A contract for building a ship or supplying materials for her construction is not

---

[66] The Court granted Plaintiffs leave to file a sur-reply brief, but Plaintiffs failed to address the implied warranty claim in the sur-reply brief. *See* Rec. Doc. 35.

[67] Rec. Doc. 21-3 at 4–6.

[68] *Compare* Rec. Doc. 21-8 at 1 (listing "Candies Shipbuilders LLC" as the buyer for Invoice No. 11315001) *with* Rec. Doc. 27-2 at 9 (listing "Otto Candies, LLC" as the buyer for Invoice No. 113150011). *See also* Rec. Doc. 27-2 at 1 (Decl. of Otto Candies, III).

[69] *Compare* Rec. Doc. 21-8 at 1 *with* Rec. Doc. 27-2 at 9.

[70] *Goddard v. Foster*, 84 U.S. 123, 124 (1872)

[71] Rec. Doc. 21-8 at 1; Rec. Doc. 27-2 at 9.

[72] *See Goddard*, 84 U.S. at 124.

a maritime contract."[73] This is a contract for the sale of an engine for a vessel.[74] Given that this contract is for the sale of materials for a ship, the Court finds that this is not a maritime contract and is thus governed by state law.

A federal court sitting in diversity applies the law of the state in which it sits.[75] Louisiana's choice of law provision, Article 3537 of the Louisiana Civil Code, provides that "an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue."[76] To determine which state's policies are most seriously impacted, courts consider:

> (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.[77]

Here, the Court finds that Louisiana law governs the contract. No party disputes that the parties to the contract are Louisiana entities, that the contract was formed in Louisiana, and that the

---

[73] *Perry v. Haines*, 191 U.S. 17, 39 (1903) (citing *People's Ferry Co. v. Beers*, 20 How. 393; *Roach v. Chapman*, 22 How. 129). *See also Chase Manhattan Fin. Servs. v. McMillian*, 896 F.2d 452, 457 (10th Cir. 1990) ("[C]ontracts for building a ship, or supplying materials for the original construction of a ship, are not "maritime" contracts within the province of admiralty jurisdiction."); *Thames Towboat Co. v. The Schooner Francis McDonald*, 254 U.S. 242, 243 (1920) ("[T]he settled rule is that a contract for the complete construction of a ship or supplying materials therefor is nonmaritime, and not within the admiralty jurisdiction."); *Walter*, 537 F.2d at 94 ("[C]ontracts for the construction of a ship are not ordinarily within the Article III maritime and admiralty jurisdiction.").

[74] Rec. Doc. 27-2 at 9.

[75] *See, e.g.*, *Rosenberg v. Celotex Corp.*, 767 F.2d 197, 199 (5th Cir. 1985).

[76] La. Civ. Code art. 3537.

[77] *Id.*

11

transaction was completed in Louisiana.[78] Accordingly, Louisiana's policies would be most seriously impaired and the Court will apply Louisiana law.

Under Louisiana law, actions based on a breach of implied warranty must be brought in redhibition rather than breach of contract.[79] "Redhibition is the remedy when the defect in the thing sold renders it absolutely useless or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased the thing had he known of the vice."[80] Article 2534 of the Louisiana Civil Code provides that redhibition is subject to a one-year prescriptive period.[81] However, if a manufacturer knew of the defect, this period commences from the day the defect was discovered by the buyer.[82] Manufacturers are presumed to have knowledge of such defects.[83] Thus, prescription commences on the date the buyer had actual or constructive knowledge of the defect.[84]

Constructive knowledge is "whatever notice is enough to excite attention and put the injured party on guard or call for inquiry."[85] "Such notice is tantamount to knowledge or notice of

---

[78] Rec. Doc. 21-2 at 3; Rec. Doc. 21-3 at 2; Rec. Doc. 27 at 2–4; Rec. Doc. 27-1 at 3; Rec. Doc. 31 at 7.

[79] *PPG Indus., Inc.*, 664 F.2d at 1335. *See also Rapides Grocery Co. v. Clopton*, 131 So. 734, 734 (La. 1930); *Molbert Bros. Poultry & Egg Co. v. Montgomery*, 261 So. 2d 311, 314 (La. App. 3 Cir. 1972); *Yeargain v. Blum*, 144 So. 2d 756, 757 (La. App. 4 Cir. 1962); *Crowley Grain Drier, Inc. v. Fontenot*, 132 So. 2d 573, 577 (La. App. 3 Cir. 1961); *Walton v. Katz & Besthoff, Inc.*, 77 So. 2d 563, 566 (La. App. Orls. 1955).

[80] *PPG Indus., Inc.*, 664 F.2d at 1335–36 (citing La. Civ. Code art. 2520).

[81] La. Civ. Code art. 2534; *See Young v. Ford Motor Co.*, 595 So. 2d 1123, 1127 (La. 1992); *Philippe v. Browning Arms Co.*, 395 So. 2d 310, 318 n.15 (La. 1980) (Lemmon, J., dissenting); *Doyle v. Fuerst & Kraemer, Ltd.*, 56 So. 906, 908 (La. 1911); *George v. Shreveport Cotton Co.*, 38 So. 432, 434 (La. 1905).

[82] La. Civ. Code. art. 2534. *See also PPG Indus., Inc.*, 664 F.2d at 1334.

[83] La. Civ. Code art. 2534.

[84] *See, e.g., Encalade v. Coast Quality Constr. Corp.*, 2000-925, p. 5 (La. App. 5 Cir. 10/31/00); 772 So. 2d 244, 247 *writ denied* 2000-3229 (La. 1/26/01); 782 So. 2d 634; *Beth Israel v. Bartley, Inc.*, 579 So. 2d 1066, 1072 (La. App. 4 Cir. 1991) *writ denied* 587 So. 2d 696 (La. 1991).

[85] *Hogg v. Chevron USA, Inc.*, No. 2009-2632, p. 7 (La. 7/6/10); 45 So. 3d 991, 997 (citing *Campo v. Correa*,

everything to which a reasonable inquiry might lead" and courts consider "the reasonableness of the injured party's action or inaction in light of the surrounding circumstances."[86]

Here, the Court finds that Plaintiffs' implied warranty claims have prescribed. The engine failure giving rise to this action occurred on April 16, 2019.[87] Plaintiffs' investigation of the cause of the failure began shortly thereafter on May 9, 2019.[88] As the other "ideas and theories into the cause of the failure were dis-proved," the investigation's "focus was turned to the crank shaft."[89] On May 28, 2019, Plaintiffs' metallurgist began his inspection of the crank shaft.[90] Ultimately, the metallurgist determined that a fracture in the crank shaft was the cause of the engine failure.[91]

The Court finds that the investigation into the crank shaft was sufficient notice "to excite attention" because it not only "call[ed] for inquiry," but Plaintiffs did, in fact, pursue that inquiry by sending the crank shaft off for metallurgical testing.[92] This "notice is tantamount to knowledge or notice of everything to which a reasonable inquiry might lead."[93] Therefore, this investigation put Plaintiffs on constructive notice of the crank shaft's defect and the prescriptive period commenced from May 28, 2019. Plaintiffs filed their Complaint on July 1, 2020, over one year

---

2001-2707, p. 12 (La. 6/21/02); 828 So.2d 502, 510–11).

[86] *Id.* at p. 7; 45 So. 3d at 998.

[87] Rec. Doc. 1 at 3.

[88] *See* Rec. Doc. 21-9 at 13.

[89] *Id.* at 22.

[90] *Id.*

[91] *Id.*

[92] *Hogg*, No. 2009-2632 at p. 7; 45 So. 3d at 997; *see also* Rec. Doc. 21-9 at 22.

[93] *Hogg*, No. 2009-2632 at p. 7; 45 So. 3d at 998.

13

from the date of Plaintiffs' constructive notice.[94] Thus, Plaintiffs' implied warranty claims have prescribed. Accordingly, the Court grants Defendant's motion and dismisses Plaintiffs' implied warranty claims.

### V. Conclusion

Considering the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment[95] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' implied warranty claims are **DISMISSED WITH PREJUDICE**.

NEW ORLEANS, LOUISIANA, this __18th__ day of October, 2021.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[94] Rec. Doc. 1.

[95] Rec. Doc. 21.